PERCY E. TODD *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.
(2821)

SPALLONE, DALY and MCKEEVER, Js.

Argued May 24—decision released September 17, 1985

*John L. Ponzini,* for the appellant (plaintiff).

*Donald E. Wasik,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, and *Robert E. Walsh,* assistant attorney general, for the appellee (named defendant).

*Gregory B. Nokes,* for the appellee (defendant Hall-Brooke Foundation, Inc.).

McKEEVER, J. This appeal arises from a judgment of the Superior Court dismissing the plaintiff's appeal from the employment security board of review's decision affirming the appeals referee's denial of unemployment compensation benefits to the plaintiff.

The plaintiff was employed by the defendant hospital, Hall-Brooke Foundation, Inc. (Hall-Brooke), from September, 1968, until February 18, 1982, as a clerk-messenger. He was hired by Elizabeth Solomon,[1] the former executive director of Hall-Brooke. Throughout his employment at Hall-Brooke, the plaintiff maintained a personal friendship with Solomon and worked for her on a part time basis after she was removed as an official of Hall-Brooke. On February 17, 1982, Solomon attempted a takeover of the hospital, but her plans were thwarted by a court injunction. The plaintiff was discharged by his employer when it learned that he was present during the attempted takeover. Following his discharge, the plaintiff successfully filed for unemployment compensation benefits.

---

[1] The first name of Ms. Solomon is spelled as Elizabeth in the record but in the briefs is spelled as Elisabeth. In this opinion we use the spelling adopted in the record.

The appeals referee decided that the plaintiff's passive involvement in the attempted takeover of his employer's facility did not constitute acts of felonious or repeated wilful misconduct in the course of his employment. The employer appealed to the employment security board of review (board), which remanded the matter to the appeals referee for further proceedings for the purpose of re-examining, by means of additional evidence and testimony, the plaintiff's actions in light of the employer's allegations which caused his discharge on February 18, 1982. On remand, the appeals referee sustained the employer's appeal and denied benefits to the plaintiff on the ground that his actions throughout the day of February 17, 1982, on behalf of Solomon, without actual or implied authorization of the plaintiff's employer, constituted repeated wilful misconduct.

The appeals referee at that second hearing found the following facts. The plaintiff met Solomon, as arranged in a phone conversation with her the night before, on the grounds of Hall-Brooke prior to his scheduled working hours. After arriving, the plaintiff was aware that conditions were other than normal as hospital officials, including those he reported to, had not reported to work. At Solomon's direction, the plaintiff made his post office run. Later, at Solomon's direction, he went to the employer's bank and thereafter continued to perform tasks at her direction. The plaintiff made no attempt to determine the legitimacy of Solomon's authority, despite prior notification to him by his employer that he was to report Solomon's presence on the premises since she no longer had any legitimate authority at Hall-Brooke. Testimony also revealed that when Solomon met the plaintiff she was accompanied by a private security force and that the plaintiff observed a locksmith on the premises who had been hired by Solomon to change the locks.

The plaintiff appealed the appeals referee's decision, rendered after the remand, to the board, which adopted the referee's findings and affirmed the decision. Pursuant to General Statutes § 31-249b, the plaintiff appealed to the Superior Court, where the trial court rendered a judgment dismissing his appeal. From that judgment, he appeals to this court.

Our review of this matter is limited "since the referee determined that the plaintiff had not satisfied the statutory eligibility requirements for unemployment benefits, we have to determine whether the action taken by the referee and affirmed by the board and the Superior Court was reasonable and supported by the evidence." *Lazarcheck* v. *Administrator,* 1 Conn. App. 591, 594, 474 A.2d 465 (1984). The plaintiff argues, on appeal, that the trial court erred in not finding that the referee's conclusion that he was guilty of repeated wilful misconduct within the meaning of General Statutes § 31-236 (2) (B) was illegal, arbitrary or unreasonable in light of the evidence.

An employee discharged for repeated wilful misconduct is ineligible for unemployment benefits pursuant to General Statutes § 31-236 (2) (B). The claim that the plaintiff's actions did not constitute wilful misconduct is without merit. "In this context, 'wilful misconduct' refers to conduct evincing a wilful disregard of an employer's interest such as deliberate violations of the employer's procedures or a disregard of expected standards of behavior. *Hannon* v. *Administrator,* 29 Conn. Sup. 14, 17, 269 A.2d 80 (1970); see also *DeMilo* v. *West Haven,* 189 Conn. 671, 678, 458 A.2d 362 (1983). Wilful misconduct includes deliberate disobedience or the intentional violation of a known rule. *A. C. Gilbert Co.* v. *Kordorsky,* 134 Conn. 209, 211–12, 56 A.2d 169 (1947); *Bigelow Co.* v. *Waselik,* 133 Conn. 304, 308, 50 A.2d 769 (1946)." *Bailey* v. *Administrator,* 3 Conn. App. 494, 495, 490 A.2d 92 (1985). The plaintiff assisted

in an attempted takeover of the employer's facility. Surely, this is a deliberate disregard of expected standards of behavior. Further, the plaintiff was instructed to report the presence of Solomon on the premises, which he did not do, despite having advance warning of her intention to set foot on the premises. The subordinate facts found by the appeals referee support the conclusion that the plaintiff's conduct constituted wilful misconduct.

Whether the appeals referee could reasonably conclude that the plaintiff's action on February 17, 1982, constituted repeated wilful misconduct, however, is not so easily disposed of. In the context of this statute, repeated has been "defined as 'again and again.' " *Lazarcheck* v. *Administrator,* supra, 595. The plaintiff argues that his actions could not be construed as repeated wilful misconduct because they all occurred in the span of one day, and he was not warned between the acts that future such action would result in his discharge. Prior to 1979, the repetitiveness of certain conduct was an evidentiary inference as to whether the conduct was wilful misconduct or a thoughtless act on the spur of the moment. *Bigelow Co.* v. *Waselik,* supra, 308; *Sturges* v. *Administrator,* 27 Conn. Sup. 215, 218–19, 234 A.2d 372 (1966); *Martino* v. *Administrator,* 20 Conn. Sup. 394, 398, 136 A.2d 810 (1957). The absence of repetition, however, did not prevent a discharge for wilful misconduct. *Bigelow Co.* v. *Waselik,* supra. In 1979, the statute was amended by inserting "repeated" before wilful misconduct. Public Acts 1977, No. 77-319.

The legislative history answers the plaintiff's argument that acts within the period of one day, where no warning is given between those acts, cannot constitute repeated wilful misconduct and indicates the contrary. Senator Lewis B. Rome speaking on behalf of the passage of this amendment commented: "I rise with seri-

ous reservations to support the amendment. I think it somewhat improves the present legislation, but only time will tell if, in fact, in reality, it does. I specifically refer to line 56. In line 56, No. 1, we're going to add language 'felonious conduct or,' and I hope that the clarification offered by Senator [James J.] Murphy [Jr.] will be significant, but the next word remains in the statute and that next word is repeated. The word is 'repeated.' I give you an example, in Texas, as a matter of fact, a ball player assaulted his manager. He did quite a job on him, and under our old law, I believe that is called wilful misconduct,[2] and under our old law, that second baseman would not be able to collect unemployment compensation for a period of five weeks. Now, he gets a second punch or punches because we now say, it must be 'repeated wilful misconduct.' I would caution you that that creates a problem for me. I have tried to utilize the time on both these amendments so as to expedite the process of improvement. I find this less than perfect. As a matter of fact, I find it [gives] me considerable difficulty. As I have suggested . . . I intend to vote for it with that reluctance as I have suggested that on Senator [Joseph J.] Fauliso's amendment on the first piece of legislation, that I hope that we could address the problems that I've just suggested and I could give you many more of one instance of wilful misconduct including throwing a hammer into a hundred thousand dollar machine and fouling it up and still having the second bite. I think if we seriously address the problem at another time on another labor bill to suggest that people who commit a physical assault on a fellow employee without justification, the people who do extensive damage not even damage, but extensive

---

[2] Whether the example of an act of misconduct used by Senator Rome is accurate is immaterial; *Guest* v. *Administrator*, 22 Conn. Sup. 458, 174 A.2d 545 (1961); as his comments and Senator Fauliso's comments throw light on the legislative intent in using "repeated" in so far as the necessary time span between acts and the necessity of a warning.

damage to the property of another employee or the employer, that they ought to be permanently disqualified on the basis that that is by definition that we should establish. Wilful misconduct of a separate variety and an important degree. I, in the spirit of ending the debate and exercising the judgment that this bill makes some slight improvement, I will support the amendment and hope we all will support the bill." 20 S. Proc., Pt. 4, 1977 Sess. pp. 1553–54.

Senator Joseph J. Fauliso responded to that statement by inquiring, "[i]n that episode pertaining to the ball player, did he punch him twice or did he punch him once, because then the question of repeated might be invoked." Id., pp. 1554–55. The comments on the legislation on the floor of the house likewise do not buttress the plaintiff's argument. The opposition to the passage of the amendment in the house interpret the amendment not to require a warning before discharge. 20 H.R. Proc. Pt. 10, 1977 Sess., pp. 4164–76. The legislative history, particularly the comments on the floor of the senate, support the appeals referee's decision. In light of that, we cannot say the appeals referee's conclusion that the plaintiff's conduct constituted repeated wilful misconduct is unreasonable nor can we say that the subsidiary facts do not support that conclusion. *Bailey* v. *Administrator,* supra.

There is no error.

In this opinion the other judges concurred.